IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DONALD A. BEST | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:09-cv-00625 |
| | § | |
| EXXONMOBIL CORPORATION, | § | |
| EXXONMOBIL PENSION PLAN, AND | § | |
| ADMINISTRATOR-BENEFITS OF THE | § | |
| EXXONMOBIL PENSION PLAN | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE LEE ROSENTHAL:

Pursuant to this Court's Order, entered June 26, 2009, Plaintiff, Donald A. Best, files this First Amended Complaint against Defendants, ExxonMobil Corporation, ExxonMobil Pension Plan, and the Administrator-Benefits in his/her capacity as Plan Administrator of the ExxonMobil Pension Plan (collectively referred to as "Defendants"), and would respectfully show the Court as follows:

## I.
## NATURE OF THE ACTION

1. Plaintiff seeks damages and any other available relief, in law or in equity, to remedy ExxonMobil's breach of employment contract, fraudulent inducement and misrepresentations. In the alternative, Plaintiff seeks damages and any other available relief, in law or in equity, to remedy Defendants' violations of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA").

## II.
## PARTIES

2. Plaintiff, Donald A. Best ("Plaintiff" or "Mr. Best"), is an individual and permanent resident of Harris County, Texas and is a participant and beneficiary under an ERISA pension

plan sponsored and/or administered by Defendants.

3. Defendant ExxonMobil Corporation ("ExxonMobil") is a New Jersey corporation that has its principal place of business in the State of Texas. ExxonMobil is the sponsor of an ERISA pension plan under which Plaintiff was a participant and beneficiary.

4. Defendant ExxonMobil Pension Plan (the "Plan") is an employee benefit plan subject to ERISA. The Plan provides for the payment of retirement benefits to plan participants and beneficiaries. The Plan is a noncontributory retirement plan; that is, ExxonMobil pays the full cost of the plan. The Plan is an entity subject to suit pursuant to the provisions of ERISA.

5. Defendant Administrator-Benefits for the ExxonMobil Pension Plan (the "Administrator") is the plan administrator and a named fiduciary under the provisions of the plan. The Administrator, in its capacity as the plan administrator, is subject to suit pursuant to the provisions of ERISA.

## III.
## JURISDICTION AND VENUE

6. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 and the amount in controversy exceeds the jurisdictional limits of this Court.

7. Venue is proper in this District because some or all of the Defendants may be found in this District, and some or all of the acts and omissions for which relief is sought occurred in this District.

## IV.
## FACTUAL BACKGROUND

8. On September 2, 1975, Mr. Best began working for Imperial Oil Limited ("Imperial"), a Canada-based integrated oil company. At all times relevant and material hereto, ExxonMobil and/or one of its predecessors in interest owned more than fifty (50) percent of Imperial. Mr.

Best continued his employment with Imperial through November 30, 1983.

9. Following Mr. Best's departure from Imperial, he owned and worked for his own company for approximately four years. On October 29, 1987, Mobil Oil ("Mobil") presented Mr. Best with a written employment contract offering him a salary and benefits comparable to the amount he was receiving from his own company. As expressed in the written contract, it was Mobil's intention that Mr. Best be employed by Mobil Exploration and Producing Services Incorporated ("MEPSI") in Dallas, Texas; however, he would begin employment with Mobil in Canada. *See* Exhibit A. The contract detailed Mobil's and Mr. Best's obligations respectively. By the terms of the contract, Mobil and MEPSI were obligated to make formal application to United States Immigration for an appropriate visa so that Mr. Best could work in Dallas. *Id.* Once Mr. Best was transferred to MEPSI in Dallas and after he obtained a permanent resident visa, the contract provided that Mr. Best "would be placed on the U.S. Dollar payroll, enrolled in the U.S. Benefits plan and treated as a U.S. Mobil Domestic employee." *Id.* In consideration of the promises set forth in the written employment contract, Mr. Best relinquished the income and benefits he was receiving from his own company and accepted Mobil's employment offer.

10. In August 1991, Mobil transferred Mr. Best to MEPSI in Dallas. Thereafter, Mr. Best obtained a permanent resident visa in August 1993 and Mobil was notified of same at that time. Therefore, pursuant to the terms of the written contract, Mr. Best performed his obligation to obtain the visa which triggered Mobil's contractual duty to convert Mr. Best to U.S. Mobil domestic employee status at that time.

11. In the fall of 1999, Exxon and Mobil merged businesses to form ExxonMobil. In December 1999, ExxonMobil offered Mr. Best a position of employment. One of the merger-related advantages offered to U.S. Mobil domestic employees who accepted employment with

3

ExxonMobil was that they would accrue pension credits totaling their ExxonMobil service, their Mobil service and any previous Exxon or Exxon-affiliate service. Because Mr. Best was a U.S. Mobil domestic employee, pursuant to his employment contract, if he accepted ExxonMobil's employment offer, he would accrue pension credits for his years of service at ExxonMobil, his years of service at Mobil and his years of service at Imperial (a qualified Exxon-affiliate). Not only did the written terms of Mr. Best's employment contract with Mobil confirm that he would receive these merger-related advantages as a U.S. Mobil domestic employee, but Mr. Best also received confirmation of the same from ExxonMobil's management. In consideration of the explicit representations made by Mobil and confirmed by ExxonMobil's management, Mr. Best accepted employment with ExxonMobil.

12. In January 2000, Mr. Best was transferred from Dallas to the ExxonMobil Upstream Research Center in Houston. In 2003, nearly ten years after Mr. Best had obtained a permanent resident visa, he received notice that the ExxonMobil Human Resources department officially transferred him to the U.S. dollar payroll and enrolled him in the U.S. benefits plan.

13. On September 5, 2007, Mr. Best retired from ExxonMobil with more than 28 years of ExxonMobil service. On April 3, 2008, Mr. Best received his Pension Benefit Statement from the Administrator and/or the Plan which indicated that the company only credited Mr. Best with 19.8333 years of pension service with ExxonMobil. Notwithstanding Mobil's contractual obligation to convert Mr. Best to U.S. Mobil domestic employee status after he obtained a permanent resident visa and the representations made to Mr. Best by ExxonMobil's management confirming he would receive the merger-related advantages, the Administrator and/or the Plan failed to include Mr. Best's 8.3 years of service with Imperial in calculating his ExxonMobil pension service.

4

14.     Thereafter, Mr. Best appealed the decision to exclude his prior service with Imperial in calculating his pension benefits, and the appeal was denied. The asserted basis for denying Mr. Best's appeal was that he was not a U.S. Mobil domestic employee prior to the merger in 1999 (despite Mobil's contractual obligation to convert Mr. Best to U.S. Mobil domestic employee status after he obtained a permanent resident visa in 1993), and therefore his benefits were determined by the terms of the Mobil Canada benefits plan, which did not recognize the Imperial service in calculating his ExxonMobil pension service. Importantly, if Mr. Best was treated as a U.S. Mobil domestic employee prior to the merger, as explicitly contemplated under the terms of his employment contract, then he would receive pension credit for his years of service with Imperial. Put differently, because ExxonMobil breached Mr. Best's employment contract by failing to convert him to U.S. Mobil domestic employee status after he obtained a permanent resident visa in 1993, Mr. Best has incurred damages, including loss of benefits.

## V.
## STATE LAW CLAIMS FOR RELIEF

### A.    BREACH OF CONTRACT

15.     Mr. Best sues ExxonMobil in its capacity as Mr. Best's employer for breach of employment contract. Mr. Best and ExxonMobil[1] formed an employee-employer relationship by entering into an employment contract, as reflected by Exhibit A. In consideration of the terms of the contract and the promises made by ExxonMobil therein, Mr. Best accepted the employment offer. Mr. Best performed all of his obligations under the terms of the contract. However, ExxonMobil breached the employment contract by failing to convert Mr. Best to U.S. domestic employee status after he obtained a permanent resident visa in 1993. As a result of

---

[1] Mobil and ExxonMobil are hereinafter referred to as "ExxonMobil" because, following the merger, ExxonMobil succeeded to all of Mobil's rights and liabilities.

5

ExxonMobil's breach of employment contract, Mr. Best has suffered damages, including loss of benefits.

**B.    FRAUDULENT INDUCEMENT**

16.    By and through the conduct outlined above, ExxonMobil, as Mr. Best's employer, intentionally and knowingly made material and false representations to Mr. Best with the intent Mr. Best act on and rely upon those representations. Based on ExxonMobil's representations, Mr. Best relinquished the salary and benefits he was receiving from his own company and accepted an employment offer that he would not have accepted absent those representations. As a direct result of Mr. Best's reliance on ExxonMobil's representations, Mr. Best has suffered damages, including relinquishment and loss of benefits.

17.    Additionally, ExxonMobil's management made material and false representations to Mr. Best regarding his employment status and the merger-related advantages he would receive if he accepted a position of employment with ExxonMobil. These false representations induced Mr. Best to accept ExxonMobil's employment offer. As a direct, legal and proximate result of ExxonMobil's material and false representations, Mr. Best has suffered damages, including relinquishment and loss of benefits.

**C.    MISREPRESENTATION**

18.    Based on the facts above, ExxonMobil's acts and/or omissions constitute negligence. ExxonMobil failed to exercise the standard of reasonable care and competence expected out of an employer in making certain representations to Mr. Best regarding his employment status. ExxonMobil willfully misrepresented to Mr. Best that if he transferred from Canada to the United States and obtained permanent resident status then he would be converted to U.S. Mobil domestic employee status. ExxonMobil made such representations with the intent that Mr. Best

act on and rely upon same in making informed decisions regarding his career, his family and his retirement plans. In reliance on such representations, Mr. Best accepted ExxonMobil's employment offer, transferred his family from Canada to the United States and obtained permanent resident status.

19. Additionally, ExxonMobil failed to exercise the standard of reasonable care and competence expected out of an employer in providing Mr. Best with adequate information and in ascertaining the accuracy of such information concerning the advantages and disadvantages of accepting employment with ExxonMobil following the merger. In response to Mr. Best's specific inquiry on the issue, ExxonMobil's management willfully misrepresented to Mr. Best that he would receive certain merger-related advantages if he accepted employment with ExxonMobil. ExxonMobil made such representations with the intent that Mr. Best act on and rely upon same in making informed decisions regarding his future employment and his retirement. In reliance on the representations made by ExxonMobil, Mr. Best accepted ExxonMobil's employment offer.

20. It was foreseeable that Mr. Best would rely upon these representations and verifications provided by ExxonMobil. Further, Mr. Best's reliance was reasonable and detrimental. As a proximate cause of ExxonMobil's negligent misrepresentations, Mr. Best has suffered damages.

### D. PROMISSORY ESTOPPEL

21. Based on the above facts, ExxonMobil should be estopped from failing to honor the promises made to its employee, Mr. Best. Under the employment contract offered to Mr. Best, ExxonMobil promised Mr. Best that he would be converted to U.S. Mobil domestic employee status if he accepted employment with ExxonMobil, transferred from Canada to the United States and obtained a permanent resident visa. ExxonMobil made these promises with the intent

that Mr. Best act on them and/or ExxonMobil should have reasonably expected Mr. Best to rely on such promises. In reliance on the promises made by ExxonMobil, Mr. Best accepted the employment offer, transferred from Canada to the United States and obtained a permanent resident visa. Mr. Best's reliance was foreseeable, reasonable and detrimental. As a result of ExxonMobil breaching its promises, Mr. Best has suffered damages. Injustice can be avoided only by enforcing ExxonMobil's promise to treat Mr. Best as though he had been converted to U.S. domestic employee status as of the date he obtained a permanent resident visa in August 1993.

22.     Additionally, ExxonMobil promised Mr. Best that he would receive certain merger-related advantages if he accepted employment with ExxonMobil following the merger. ExxonMobil made these promises with the intent that Mr. Best act on them and/or ExxonMobil should have reasonably expected Mr. Best to rely on such promises. In reliance on the promises, Mr. Best accepted ExxonMobil's employment offer. Mr. Best's reliance was foreseeable, reasonable and detrimental. As a result of ExxonMobil breaching its promises, Mr. Best has suffered damages. Injustice can be avoided only by enforcing ExxonMobil's promise to grant Mr. Best the merger-related advantages that he should have received when he accepted ExxonMobil's offer of employment in December 1999.

## VI.
## ALTERNATIVE CLAIMS FOR RELIEF UNDER ERISA

### A.     BREACH OF FIDUCIARY DUTIES

23.     Alternatively, pursuant to ERISA § 1132(a)(3), Mr. Best seeks all available relief, equitable or injunctive, to remedy the breach of fiduciary duties owed by the Administrator, the Plan and/or ExxonMobil, in their roles as fiduciaries, (hereinafter collectively referred to as the

"Plan Fiduciaries"). Under the provisions of ERISA and/or the plan terms, the Plan Fiduciaries owed Mr. Best fiduciary duties, including the duty to administer the plan prudently, the obligation to discharge duties solely in the interest of Mr. Best, and the duty not to discriminate against Mr. Best in any way to prevent him from obtaining a plan benefit. In administering the plan, the Plan Fiduciaries failed to exercise the skill, care, prudence and diligence imposed upon a fiduciary. The Plan Fiduciaries acted solely for their own interests and in direct contravention to the interests of Mr. Best. As such, the Plan Fiduciaries' acts and omissions constitute a breach of the fiduciary duties owed to Mr. Best.

24. Based on the above facts, the Plan Fiduciaries breached their duties by failing to place Mr. Best on the U.S. dollar payroll and enroll him in the U.S. benefits plan after he obtained a permanent resident visa. Despite being notified that Mr. Best had obtained a permanent resident visa in August 1993 and repeated assurances to Mr. Best that all approvals had been obtained to place Mr. Best on the U.S. dollar payroll and enroll him in the U.S. benefits plan, the Plan Fiduciaries failed to implement the approved plans until 2003. The manner in which the Plan Fiduciaries carried out their duties was unreasonable, imprudent and anything but diligent. Further, the Plan Fiduciaries did not discharge their duties solely in the interest of Mr. Best. In fact, the Plan Fiduciaries' acts and/or omissions prevented Mr. Best from obtaining benefits to which he is rightfully entitled. Thus, the Plan Fiduciaries' failure to timely place Mr. Best on the U.S. dollar payroll and enroll him in the U.S. benefits plan pursuant to the approvals obtained constitutes a breach of fiduciary duties.

25. Additionally, the Plan Fiduciaries breached their duties by failing to disclose truthful information to Mr. Best when they represented to him that he would receive certain merger-related advantages if he accepted ExxonMobil's offer of employment in December 1999. The

Plan Fiduciaries failed to ascertain the accuracy of such representations and failed to disclose the truthfulness of such representations until long after Mr. Best had accepted the employment offer. Thus, the Plan Fiduciaries breached the duties owed to Mr. Best, as they failed to exercise reasonable care and competence in providing Mr. Best accurate information, knowing Mr. Best intended to rely on such information to make informed decisions regarding his future employment and retirement plans. As a direct result of Mr. Best's reliance on the Plan Fiduciaries' false representations, Mr. Best suffered damages including loss of benefits.

26. Mr. Best rendered valuable services to ExxonMobil for nearly three decades. ExxonMobil accepted and enjoyed Mr. Best's loyal services during his long tenure with the company. Now, as a result of the Plan Fiduciaries' own wrongdoing, Mr. Best has incurred substantial damages. By failing to discharge their fiduciary duties reasonably, prudently, diligently and in the sole interest of Mr. Best, the Defendants have retained substantial amounts of money and benefits to which Mr. Best is rightfully entitled. The Defendants have become unjustly enriched through their own wrongdoing and unclean hands. Therefore, this Court should enjoin the Defendants and require that they treat Mr. Best as though he was a U.S. Mobil domestic employee for purposes of calculating his benefits.

### C. EQUITABLE ESTOPPEL

27. Alternatively, Mr. Best seeks all available relief, equitable or injunctive, under ERISA § 1132(a)(3) to remedy the Plan Fiduciaries' violations. The Plan Fiduciaries intentionally and knowingly made material and false representations to Mr. Best by promising that they would convert him to U.S. Mobil domestic employee status if he accepted employment with ExxonMobil, transferred from Canada to the United States and obtained a permanent resident visa. The Plan Fiduciaries made these representations with the intent that Mr. Best rely on such

representations. In reliance on these representations, Mr. Best accepted the employment offer, transferred from Canada to the United States and obtained a permanent resident visa. Mr. Best's reliance on the Plan Fiduciaries' written representations, oral verifications and repeated assurances was foreseeable, reasonable and detrimental. As a result of such reliance and because of the extraordinary circumstances involved, Mr. Best has been irreparably injured. Injustice can be avoided only by enforcing the Plan Fiduciaries' promises to convert Mr. Best to U.S. domestic employee status on the date he obtained a permanent resident visa in August 1993.

28. Additionally, the Plan Fiduciaries made material representations to Mr. Best that he would receive certain merger-related advantages if he accepted employment with ExxonMobil following the merger. The Plan Fiduciaries made these representations with the intent that Mr. Best rely on such representations. In reliance on these representations, Mr. Best accepted ExxonMobil's employment offer. Mr. Best's reliance was foreseeable, reasonable and detrimental. As a result of the Plan Fiduciaries' misrepresentations and because of the extraordinary circumstances involved, Mr. Best has been irreparably injured. Injustice can be avoided only by enforcing the Plan Fiduciaries' representations and assurances that Mr. Best would receive the merger-related advantages because all approvals had been obtained to place Mr. Best on the U.S. dollar payroll and enroll him in the U.S. benefits plan. As such, the Plan Fiduciaries should be estopped from failing to honor the representations made to Mr. Best.

**D.   INTERFERENCE WITH PROTECTED RIGHTS**

29. Alternatively, Mr. Best seeks all available relief to remedy violations of ERISA § 1140. ExxonMobil, as Mr. Best's employer, and the Plan Fiduciaries directly interfered with the attainment of rights and benefits to which Mr. Best was entitled or would become entitled. ExxonMobil interfered with Mr. Best's attainment of rights and benefits by knowingly breaching

Mr. Best's employment contract. ExxonMobil breached the employment contract by failing to convert Mr. Best to U.S. Mobil domestic employee status. Additionally, the Plan Fiduciaries abused their authority and discretion by failing to carry out the approvals to place Mr. Best on the U.S. dollar payroll and enroll him in the U.S. benefits plan. As a result of such interferences, Mr. Best has sustained damages.

## VII.
## CONDITIONS PRECEDENT

30. All conditions precedent have been performed or have occurred. Upon retiring from ExxonMobil, the Administrator and/or the Plan issued Mr. Best a Pension Benefit Statement which denied Mr. Best certain benefits to which he is entitled. Subsequently, Mr. Best, through his attorneys, appealed the denial of the pension benefits that he was promised and had earned. Thereafter, the Administrator and/or the Plan denied the appeal, thus exhausting Mr. Best's administrative remedies under the plan and necessitating the filing of this action.

## VIII.
## JURY DEMAND

31. Mr. Best asserts his rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## IX.
## DAMAGES

32. Defendants acted with gross indifference to the rights and interests of Mr. Best. The wrongs done by Defendants were aggravated by willfulness, wantonness and malice for which the law allows the imposition of exemplary damages. Defendants' conduct was intentional, willful and wanton, and without justification or excuse. It is offensive to any sense of public justice.

33. Mr. Best, therefore, seeks actual, compensatory, consequential, additional and exemplary damages, as may be allowed in equity or at law under federal statutory or federal and/or state common law. In this regard, an award of substantial exemplary damages is necessary to serve as a deterrent to the unconscionable conduct displayed by Defendants. An award of exemplary damages will not only deter Defendants from taking such actions, but also would serve and deter others who might consider such actions and would protect the interests of others.

34. Mr. Best also seeks to recover attorneys' fees, court costs and all such other damages available and/or recoverable in equity or at law under federal statutory or federal and/or state common law, including but not limited to Texas Civil Practice & Remedies Code § 38.001, *et seq.*

## X.
## PRAYER

35. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon final hearing, he have judgment against Defendants and recover from Defendants as follows:

   (a) Damages occasioned by Defendants' breach of contract, fraudulent inducement, misrepresentation, promissory estoppel, and violations of ERISA in an amount in excess of the jurisdictional limits of this Court;

   (b) Statutory, actual, compensatory, consequential, additional and exemplary damages;

   (c) Attorneys' fees incurred in the prosecution of this action, plus conditional awards in the event that this action is taken to the Court of Appeals or the Supreme Court;

   (d) All costs of suit incurred;

   (e) Pre-judgment and post-judgment interest as provided by law; and

   (f) All other and further relief, both at law and equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**GOFORTH LEWIS**

By: s/Daniel O. Goforth/s

Daniel O. Goforth – Attorney in Charge
Texas Bar No. 08064000
Southern District Bar No. 8117
Casey A. Bell
Texas Bar No. 24012271
Southern District Bar No. 24175
1111 Bagby, Suite 2200
Houston, Texas 77002
(713) 650-0022
(713) 650-1669 - fax

dangoforth@goforthlewis.com
caseybell@goforthlewis.com

**ATTORNEYS FOR PLAINTIFF,
DONALD A. BEST**

## CERTIFICATE OF SERVICE

The undersigned certifies that, pursuant to Rule 5 of the Federal Rules of Civil Procedure, this pleading was served on all counsel of record on the 31st day of July, 2009.

s/Casey A. Bell/s
Casey A. Bell