**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DONALD A. BEST, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-0625 |
| | § | |
| | § | |
| EXXON MOBIL CORPORATION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This case involves pension benefits under an ERISA plan.  The defendants have moved to dismiss.  The issues are whether the state-law claims are preempted; whether the statute of limitations bars these claims; and, if ERISA applies, how the statute of limitations affects the claims under that Act.

Based on the pleadings; the motion, response, and reply; and the applicable law, this court grants the defendants' motion to dismiss and denies the plaintiff leave to amend on the basis of futility.  The reasons are set out in detail below.

**I.      Background**

**A.      The Amended Complaint Allegations**

Best, a Canadian national, began working for Mobil Oil Canada in 1987.  Best had been working for himself for the previous four years.  Best received a letter from Mobil before he accepted employment stating that he would be transferred to work in the United States and after he obtained a permanent resident visa, would be "placed on the U.S. Dollar payroll, enrolled in the U.S.

Benefits plan and treated as a U.S. Mobil Domestic Employee." (Docket Entry No. 15, Amended Complaint ¶ 9). The letter stated that when that occurred, "the foreign compensation package [would] cease." (Docket Entry No. 21 at 4 n.3) (emphasis omitted). Best was transferred to Dallas in 1991. He obtained his permanent resident visa in August 1993. After 1993, however, he continued to be paid on the Mobil Canada payroll.

In 1999 Exxon and Mobil merged, and Best was offered a position with ExxonMobil. He accepted and continued to work for ExxonMobil in Dallas. It was not until 2003 that Best received notice from ExxonMobil that he had been transferred to the United States dollar payroll and would no longer be paid by Mobil Canada, and that he had been enrolled in the United States benefits plan. (Docket Entry No. 15, Amended Complaint ¶¶ 11–12).

Best retired from ExxonMobil in 2007. In April 2008, approximately seven months after his retirement, he received his pension benefit statement from the ExxonMobil Plan Administrator. The statement showed that he was credited with 19.8333 years of pension service with ExxonMobil. Best believed that he should have also received pension credit for 8.3 years of service with a company called Imperial Oil, where he had worked before he became self-employed—which was before he joined Mobil in 1987. Imperial Oil was an Exxon affiliate. Best appealed the pension calculation because it did not include his 8.3 years of service with Imperial Oil. The appeal was denied on the basis that Best had not been converted from a Mobil Oil Canada employee to a U.S. domestic employee before Mobil's 1999 merger with Exxon. Best was informed that had he been converted to a U.S. Mobil domestic employee before the merger, his years of prior service with Imperial Oil would have been included in the calculation of his pension service. Employees working as U.S. Mobil domestic employees in 1999, when the merger took place, and who accepted

employment with ExxonMobil, accrued pension credits totaling their ExxonMobil service, their Mobil service, and any previous Exxon or Exxon-affiliate service.  Imperial was an Exxon affiliate. Best alleges that had he been converted to a U.S. Mobil domestic employee before the 1999 merger, he would have received pension credit for his 8.3 years of service with Imperial Oil as well as his 19.8333 years of service with Mobil and ExxonMobil.  (Docket Entry No. 15, Amended Complaint ¶¶ 13–14).

Best's amended complaint alleges no claim for denial of benefits under 29 U.S.C. § 1132(a)(1)(B).  Best asserts state-law claims for breach of contract, fraudulent inducement, negligent misrepresentation, and promissory estoppel.  Best's state-law claims are based on the assertion that ExxonMobil had a legal duty under the 1987 letter to convert his status from a foreign Mobil employee to that of a United States domestic Mobil employee when he obtained his legal permanent resident status, which occurred 1993.  The defendants move to dismiss these claims on the basis of ERISA preemption and limitations.  Best argues that because the legal duty he alleges is independent of ERISA, the claims are not preempted, despite the fact that the damages he seeks are the additional ERISA pension benefits he would receive had the 8.333 years of service been included in the pension calculation.  He also argues that the state-law claims did not accrue until 2008, when he realized the impact on the pension calculation of Mobil's failure to convert his status to a U.S. domestic employee before the 1999 merger.

Best alternatively asserts claims under §§ 1132(a)(3) and 1140 of ERISA.  The defendants move to dismiss these ERISA claims.  The defendants argue that the claim under § 1132(a)(3) is barred because a claim could be asserted under § 1132(a)(1)(B).  The defendants argue that the

§ 1140 claim is barred by limitations and the inability to state a claim.  Best contends that he could not recover under § 1132(a)(1)(B) and that the discovery rule makes his § 1140 claim timely.

For the reasons explained in detail below, this court grants the motion to dismiss.  Because the complaint has already been amended and Best does not identify any expanded or different pleading that could cure the grounds for dismissal, leave to amend would be futile and is denied.

## II.     The Standard for a Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead allegations sufficient to raise the right to relief beyond the speculative level when the court assumes the allegations to be true.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A defendant may raise an affirmative defense in a Rule 12(b)(6) motion when "the facts that give rise to the defense are clear from the face of the complaint."  *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998); *see also Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (affirming the trial court's dismissal of state-law claims based on a showing of ERISA preemption).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification

. . . is considered an abuse of discretion." (internal citation omitted)).  However, a plaintiff should

be denied leave to amend a complaint if the court determines that "the proposed change clearly is

frivolous or advances a claim or defense that is legally insufficient on its face."  6 CHARLES A.

WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d

ed. 1990); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) (per curiam)

(unpublished) ("'[A] district court acts within its discretion when dismissing a motion to amend that

is . . . futile.'" (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*,

195 F.3d 765, 771 (5th Cir. 1999))).

## II.     The State-Law Claims

ERISA's provisions "supersede any and all State laws insofar as they . . . relate to any

employee benefit plan."  29 U.S.C. § 1144(a); *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724,

732 (1985); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48 (1987) ("[T]he pre-emption

clause is not limited to 'state laws specifically designed to affect employee benefit plans.'"

(quotation omitted)).   Preemption extends to common-law causes of action that relate to an

employee benefit plan.  When a plaintiff relies on a benefit plan to establish a duty on the part of the

defendant, ERISA preempts his common law claim because the claim "relates to" a benefit plan.

*See Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (holding that a claim falls within

ERISA's scope when the plaintiff is only entitled to the benefit under the plan terms); *McAteer v.

Silverleaf Resorts, Inc.*, 514 F.3d 411, 417 (5th Cir. 2008) ("The Supreme Court has stated that a law

'relates to' an employee benefit plan and is preempted if it has a connection with or reference to the

plan."); *Hobson v. Robinson*, 75 F. App'x 949, 952 (5th Cir. 2003) ("A state cause of action relates

to an employee benefit plan whenever it has 'a connection with or a reference to such plan.'"

(quoting *Hubbard v. Blue Cross & Blue Shield Assoc.*, 42 F.3d 942, 945 (5th Cir. 1995) (citations omitted))); *Dorn v. Int'l Bhd. of Elec. Workers*, 211 F.3d 938, 948 (5th Cir. 2000) ("A state law claim . . . . addressing the right to receive benefits under the terms of an ERISA plan necessarily 'relates to' an ERISA plan and is thus preempted.").

The contract breach alleged in the amended complaint is Mobil's failure to convert Best to U.S. domestic employee status, put him on the U.S. dollar payroll, and place him on the U.S. benefits plan *in 1993*, when he obtained a permanent resident visa, as stated in the 1987 letter preceding his employment. Best received notice that his status had been converted and the other actions taken *in 2003*. Best alleges that as a result of the delay, he was not a U.S. domestic employee in 1999, when the merger with Exxon occurred. As a result, his 8.3 years of service with Imperial Oil, an Exxon-affiliate, was not included in the pension calculation when he retired in 2007.

Best's fraudulent inducement claim is based on the allegations that Mobil induced him to leave his own business and become a Mobil employee in 1987 by representing that he would be treated as a U.S. Mobil domestic employee when he moved to Dallas and received permanent resident status. Although Best received such status in 1993, he was not treated as a U.S. Mobil domestic employee until 2003. Best alleges that this statement in the 1987 letter was a fraudulent and a negligent misrepresentation. Finally, Best alleges promissory estoppel, arguing that ExxonMobil should be required to treat him as though he had been converted to U.S. domestic employee status when he obtained his permanent resident visa in 1993 (or at least before the merger in 1999).

ExxonMobil argues that ERISA preempts these state-law claims and that they are barred by limitations.  Best responds that the breach of contract and other state-law claims are not preempted because the alleged breach is of ExxonMobil's independent obligation under the employment contract, not under the ERISA plan, and because he is not challenging an omission or action by any ERISA entity.

A close review of the complaint, however, shows that Best is not merely asserting a claim that his prior employer, Mobil, breached an employment agreement when it failed to treat him as a U.S. domestic employee in 1993, when he received his permanent resident status.  Best also alleges that the ERISA Plan and Plan Administrator failed to carry out the approvals to have him enrolled in the U.S. benefits plan and to have him paid on the U.S. dollar payroll.  (Docket Entry No. 15, Amended Complaint ¶ 29).  The cases are clear that when the plaintiff alleges that the duties breached extended beyond the employer to the principal ERISA entities, preemption results.  *See, e.g.*, *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 243 (5th Cir. 2006) ("For purposes of ERISA preemption the critical distinction is not whether the parties to a claim are traditional ERISA entities in some capacity, but instead whether the relevant state law affects an aspect of the relationship that is comprehensively regulated by ERISA.  As we have noted, ERISA may preempt some claims between traditional ERISA entities but not others.  And a party may qualify as an ERISA fiduciary with regard to some claims but not others.  [T]he critical determination [is] whether the claim itself created a relationship between the plaintiff and defendant that is so intertwined with an ERISA plan that it cannot be separated." (footnote, citations, and internal quotation marks omitted) (alterations in original)).

7

The Fifth Circuit has looked to substance over form in determining whether a claim is ERISA preempted.  In *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290 (5th Cir. 1989), the plaintiff worked for B.F. Goodrich and was a participant in its retirement program.  Goodrich was going to sell the division in which the plaintiff was employed, which would terminate the plaintiff's position.  Goodrich offered the plaintiff the option to work for the successor company, stop employment and receive either a special deferred pension or a lump-sum payment, or franchise a Goodrich retail branch.  *Id.* at 1291.  The plaintiff elected to open a franchise and accepted retirement benefits under a special deferred pension plan that provided benefits calculated on his service with Goodrich.  *Id.* The plaintiff alleged that Goodrich representatives orally assured him that his franchisee retirement benefits would be identical to those that he would have received as an employee of the successor corporation, but they were not.  *Id.*  The plaintiff sued for breach of contract in Louisiana state court, and Goodrich removed.  *Id.*  The district court granted summary judgment to Goodrich, holding that ERISA preempted the state-law breach of contract claim.  *Id.*

The Fifth Circuit agreed.  The court rejected the plaintiff's contention that his claims did not "relate to" the ERISA plan because "he [was] not seeking recovery from the assets of the ERISA plan or claiming more from the retirement program than the terms of the Plan specify" but was "merely seeking recovery from Goodrich pursuant to a valid oral contract unrelated to the ERISA plan."  *Id.* at 1292.  The court held that ERISA preempted the state-law claim because "the damages would consist of the pension benefits [the plaintiff] would have received" had the contract not been breached.  *Id.* at 1293.[1]  In reaching its holding, the court noted similar cases from other circuits,

---

[1]  The *Cefalu* court also noted:

> Appellant's claim has a definite connection to an employee benefit plan.  Plaintiff concedes that if he is successful in this suit his damages

including *Anderson v. John Morrell & Co.*, 830 F.2d 872 (8th Cir. 1987), in which the Eighth Circuit held that ERISA preempted the plaintiff's breach of contract action seeking to have benefits added pursuant to the employer's assurances to the plaintiff that his fringe benefits would be as good in management as they had been when he was a union employee; *Straub v. W. Union Tel. Co.*, 851 F.2d 1262 (10th Cir. 1988), in which the Tenth Circuit held that ERISA preempted an employee's negligence, breach of contract, and negligent misrepresentation claims for a failure to increase his pension benefits and alleged misrepresentations about how his pension benefits would be affected by the company's sale and reorganization; and *Phillips v. Amoco Oil Co.*, 799 F.2d 1464 (11th Cir. 1986), in which the Eleventh Circuit held that ERISA preempted an employee's claim that an employer fraudulently concealed how the sale of a part of the company would affect retirement benefits.  *See also Brown v. United Parcel Serv.*, 237 F.3d 631 (5th Cir. 2000) (unpublished) (applying *Cefalu*).

The Fifth Circuit's opinion in *Smith v. Texas Children's Hospital*, 84 F.3d 152 (5th Cir. 1996), which Best cites, is distinguishable.  In *Smith*, the plaintiff alleged that an affiliate of her

---

> would consist of the pension benefits he would have received had he been employed by TCI.  To compute these damages, the Court must refer to the pension plan under which appellant was covered when he worked for Goodrich.  Thus, the precise damages and benefits which appellant seeks are created by the Goodrich employee benefit plan.  To use any other source as a measure of damages would force the Court to speculate on the amount of damages.

871 F.2d at 1294.  The Fifth Circuit later clarified that the statement that the court would need to reference the pension plan to calculate damages was dicta and "does not, and can not, mean that any lawsuit in which reference to a benefit plan is necessary to compute plaintiff's damages is preempted by ERISA."  *Rozzell v. Sec. Servs., Inc.*, 38 F.3d 819, 822 (5th Cir. 1994).  In *Rozzell*, for example, the court held that the plaintiff's claim for retaliatory termination in violation of the Texas Workers' Compensation Act was not preempted just because the plaintiff alleged in his state-law petition that he was fired in a willful attempt to deprive him of his compensation and "benefits" of his job.  The court held that the substance of the claim alleged was retaliatory discharge in violation of state law.  *Id.*

employer "persuaded [the plaintiff] to transfer her employment to [the defendant] by promising more pay, a supervisory position, and the transfer of all of her employment benefits, including long-term disability benefits." *Id.* at 153. After the plaintiff became disabled, she was denied benefits on the basis that her disability was present before her elimination period ended. *Id.* at 154. The plaintiff sued the employer and the fund in Texas state court alleging state-law claims for fraudulent inducement and breach of contract. The employer removed on the basis of ERISA preemption. *Id.* After requiring her to amend her complaint to conform with ERISA, the district court entered final judgment for the employer on her ERISA and common law estoppel claim but remanded her fraudulent-inducement claim to state court. *Id.* The Fifth Circuit reversed in part, citing *Cefalu*, among other cases.

The appellate court held that "[t]o the extent that [the plaintiff] is claiming that she is entitled to disability benefits under [the employer's] ERISA plan, her claim is preempted. Our case law teaches that a state-law claim by an ERISA plan participant against her employer is preempted when based upon a denial of benefits under the defendant's ERISA plan." *Id.* at 155. The court held that her fraudulent-inducement claim was not preempted because the plaintiff alleged that she gave up accrued benefits at her prior employer in reliance upon the alleged misrepresentations. *Id.* The court held that she might have a claim based on the benefits she relinquished by leaving, even though the benefits allegedly promised would have been the same whether measured by benefits relinquished or benefits denied. *Id.* In contrast to *Smith*, Best has not alleged giving up accrued benefits either in 1987, when he accepted employment with Mobil, or in 1999, when he accepted the offer to remain with ExxonMobil and was credited with many years of accrued pension-service credit.

10

Even aside from the ERISA preemption argument, however, all the state law claims are barred by limitations.  The Texas common-law breach of contract, promissory estoppel, and fraudulent inducement claims all have a four-year statute of limitations.  TEX. CIV. PRAC. & REM. CODE § 16.004(a)(3), (a)(4); *id.* § 16.051; *Capstone Healthcare Equip. Servs., Inc.*, 295 S.W.3d 696, 699 (Tex. App.—Dallas 2009, pet. denied) (breach of contract); *Morriss v. Enron Oil & Gas Co.*, 948 S.W.2d 858, 869 (Tex. App.—San Antonio 1997, no writ) (fraud); *Williams v. Khalaf*, 802 S.W.2d 651, 656–57 (Tex. 1990) (fraud); *see also Martinez Tapia v. Chase Manhattan Bank, N.A.*, 149 F.3d 404, 410 (5th Cir. 1998) (breach of contract and fraud).  The negligent misrepresentation claim has a two year limitations period.  *See Newby v. Enron Corp.*, 542 F.3d 463, 468 (5th Cir. 2008) (two year period for negligent misrepresentation).

In Texas, the general rule is that a cause of action accrues and the statute of limitations begins to run when "a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred."  *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997) (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)); *Roberts v. Lain*, 32 S.W.3d 264, 269 (Tex. App.—San Antonio 2000, no pet).  The general rule is that a cause of action for breach of contract accrues when the contract is breached.  *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007); *Houston Endowment, Inc. v. Atl. Richfield Co.*, 972 S.W.2d 156, 159 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *Heron Fin. Corp. v. U.S. Testing Co.*, 926 S.W.2d 329, 331 (Tex. App.—Austin 1996, writ denied); *Harrison v. Bass Enters. Prod. Co.*, 888 S.W.2d 532, 537 (Tex. App.—Corpus Christi 1994, no writ).  If the breach is concealed from the plaintiff, Texas courts apply the discovery rule "until the plaintiff discovers or should have discovered the nature of the injury."  *Houston Endowment, Inc.*, 972 S.W.2d at 159.

11

An action for fraud accrues when the fraud is perpetrated. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988); *Lawrence v. Lawrence*, 911 S.W.2d 443, 448 (Tex. App.—Texarkana 1995, writ denied); *accord Jackson v. Speer*, 974 F.2d 676, 679 (5th Cir. 1992) (summary calendar); *Porter v. Charter Med. Corp.*, 957 F. Supp. 1427, 1434 (N.D. Tex. 1997). If the fraud is concealed from the plaintiff, the limitations period does not run until plaintiff discovers the fraud or should have discovered the fraud through the exercise of reasonable diligence. *Woods*, 769 S.W.2d at 517; *Lawrence*, 911 S.W.2d at 448; *Jackson*, 974 F.2d at 679; *accord Porter*, 957 F.Supp. at 1434. In this situation, Texas courts apply the discovery rule or the fraudulent-concealment doctrine as exceptions to the statute of limitations.[2] *S.V. v. R.V.*, 933 S.W.2d 1, 4–6 (Tex. 1996); *Computer Assocs. Int'l v. Altai, Inc.*, 918 S.W.2d 453, 455–56 (Tex. 1996).

The discovery rule is a "very limited exception to statutes of limitations" and only applies when (i) the nature of the wrong and injury are "inherently undiscoverable" and (ii) the evidence of the injury is "objectively verifiable." *Computer Assocs.*, 918 S.W.2d at 455–56; *accord In re Coastal Plains, Inc.*, 179 F.3d 197, 214 (5th Cir. 1999); *Prieto v. John Hancock Mutual Life Ins. Co.*, 132 F. Supp. 2d 506, 513 (N.D. Tex. 2001), *abrogated on other grounds by Newby v. Enron Corp.*, 542 F.3d 463 (5th Cir. 2008). The "inherently undiscoverable" requirement is met when the injured party is unlikely to discover the injury during the limitations period despite due diligence.

---

[2] There is some confusion among courts as to whether the discovery rule and the fraudulent concealment doctrine (i) toll the limitation period after the claim has accrued or (ii) delay the accrual of the claim. *Compare S.V. v. R.V.*, 933 S.W.2d 1, 5–6 (Tex. 1996), *and Computer Assocs. Int'l, Inc. v. Altai*, 918 S.W.2d 453, 455–56 (cause of action for fraud does not accrue until the fraud is discovered or should have been discovered by plaintiff), *with Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 531 (Tex. 1997) ("As with the discovery rule, [the fraudulent concealment] doctrine tolls the statute until the fraud is discovered or could have been discovered with reasonable diligence."), *and Prieto v. John Hancock Mut. Life Ins. Co.*, 132 F. Supp. 2d 506, 513–16 (N.D. Tex. 2001) (treating the fraudulent concealment doctrine and the discovery rule as tolling doctrines in vanishing premium life insurance policy case), *abrogated on other grounds by Newby v. Enron Corp.*, 542 F.3d 463 (5th Cir. 2008).

*S.V.*, 933 S.W.2d at 7; *Computer Assocs.*, 918 S.W.2d at 456; *accord Coastal Plains*, 179 F.3d at 215.  The injury does not have to be impossible to discover, but the fact that a party fails to do so is not sufficient to meet the requirement.  *S.V.*, 933 S.W.2d at 7; *accord Coastal Plains*, 179 F.3d at 215.  To be inherently undiscoverable, the wrong and the injury must be "unknown to the plaintiff because of their very nature and not because of any fault of the plaintiff."  *Coastal Plains*, 179 F.3d at 214–15 (quoting *S.V.*, 933 S.W.2d at 7).  "The rule delays the statute of limitations only until the claimant knows or should know the facts that could support a cause of action, not until she realizes that the facts do support a cause of action."  *Colonial Penn Ins. v. Market Planners Ins. Agency Inc.*, 157 F.3d 1032, 1034 (5th Cir. 1998).  "It does not operate to toll the running of the limitation period until such time as plaintiff discovers all of the elements of a cause of action."  *Id.* (quoting *Coody v. A.H. Robins Co.*, 696 S.W.2d 154, 156 (Tex. App.—San Antonio 1985, writ dism'd by agr.)); *see also Reynolds v. Guido*, 166 S.W.3d 789, 793 (Tex. App.—Dallas 2005, pet. denied).  When asserting a limitations defense at the pleading stage, the defendant's burden to establish the accrual date includes negating the applicability of the discovery rule.  *Doe v. Linam*, 225 F. Supp.2d 731, 735 (S.D. Tex. 2002) (citing *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 n. 2 (Tex. 1988)).

In this case, Best knew in 1993, and certainly no later than 2003, that he had not been converted to U.S. Mobil domestic employee status on the schedule set by the 1987 Mobil letter.  Mobil's failure to perform was clear beginning in 1993 and continued until 2003.  It was abundantly clear to Best no later than 2003 that he had not been a U.S. Mobil domestic employee or enrolled in the U.S. pension plan in 1999, when Exxon and Mobil merged.  Under the Texas legal injury rule, "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury

is not discovered until later, and even if all resulting damages have not yet occurred." *S.V.*, 933 S.W.2d at 4. "Legal injury" is defined as "an injury giving cause of action by reason of its being an invasion of a plaintiff's right." *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997) (quoting *Houston Water-Works Co. v. Kennedy*, 8 S.W. 36, 37 (Tex. 1888)).

Under the legal-injury rule, "[c]ontract claims generally accrue when the contract is breached." *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Hoover v. Gregory*, 835 S.W.2d 668, 677 (Tex. App.—Dallas 1992, no writ)); *see also Wichita Nat. Bank v. U.S. Fid. & Guar. Co.*, 147 S.W.2d 295, 297 (Tex. Civ. App. —Fort Worth 1941, no writ) ("A cause of action arising out of contractual relations between the parties accrues as soon as the contract or agreement is breached."). "A breach occurs when a party fails to perform a duty required by the contract." *Smith Int'l*, 490 F.3d at 387 (quoting *Houston Water-Works*, 8 S.W. at 37). It is the plaintiff's knowledge of the fact of the breach, and not the knowledge of the presence or extent of damage, that triggers accrual of the claim. *See id.* (holding that, after the plaintiff purchased a company warranted to be free and clear of any claims against it at the time of purchase, the plaintiff's breach of contract claim accrued on the day he was named a defendant in a lawsuit involving his interest in the company and noting that the absence of damages then arising out of the breach "did not matter for accrual purposes because the alleged breach put [the plaintiff] on notice of a legal injury—'an invasion of [his] right' to own [the company] 'free and clear' of any 'claim[s]'" (citation omitted)).

Best knew in 2003 that he had not been converted to U.S. domestic employee status in 1993 and that he was not a domestic employee or on the U.S. pension plan when the Exxon merger occurred in 1999. Limitations bars the breach of contract and fraudulent misrepresentation claims.

14

Negligent misrepresentation claims sound in negligence, not fraud.  *Kansa Reins. Co. v. Cong. Mortgage Corp. of Tex.*, 20 F.3d 1362, 1371–72 (5th Cir. 1994).   Generally, in Texas negligence actions, the limitations period runs from "the commission of the negligent act, not the date of the ascertainment of damages."  *Id.* at 1372 (quoting *Fusco v. Johns-Manville Prods. Corp.*, 643 F.2d 1181, 1183 (5th Cir. 1981)).  Without an application of the discovery rule, the limitations period on Best's negligent misrepresentation claim began to run when the letter issued in 1987.

The Fifth Circuit held, based on the weight of Texas authority when the issue was presented in 1994, that the discovery rule does not apply to cases of negligent misrepresentation.   *Kansa Reins. Co.*, 20 F.3d at 1372–73.  The Fifth Circuit's holding in *Kansa Reinsurance* has been questioned in light of subsequent decisions from Texas courts.  *See In re Sunpoint Sec., Inc.*, 377 B.R. 513, 551–52 (Bankr. E.D. Tex. 2007); *Sabine Towing & Transp. Co. v. Holliday Ins. Agency, Inc.*, 54 S.W.3d 57, 60–61 (Tex. App.—Texarkana 2001, no pet.).  But even assuming that the discovery rule applies, limitations began to run when Best learned that Mobil had failed to place him on U.S. domestic employee status, failed to pay him on the U.S. dollar payroll, and failed to enroll him in the U.S. domestic benefits plan after he had become a permanent resident.  Best knew that Mobil had breached the representations made in the 1987 letter after October 1993, when he had obtained his permanent resident status but was not put on the U.S. dollar payroll and instead continued to be paid as a Mobil Canada employee.  Best certainly knew in 2003 that the change in his status had not been made in 1993, as stated in the 1987 employment letter.  In 2003, Best received notice from ExxonMobil that he had just been placed on U.S. domestic employee status, would then be paid on the U.S. dollar payroll, and was enrolled in the U.S. benefits plan.  In 2003, Best knew that the changes had not been made in 1993, when the conditions stated in the 1987

employment letter were met.  Best did not file suit until 2009, over two years after the latest date for the limitations period for his state-law claims to expire.  The fact that Best did not receive a pension benefits statement until 2008 does not delay the accrual of the cause of action until that date.   The state-law claims are dismissed.

## III.     The ERISA Claims

### A.     The § 1140 Claim

Best claims that the defendants violated § 1140 of ERISA by failing to convert him to a U.S. Mobil domestic employee, to put him on the U.S. dollar payroll, and to enroll him in the U.S. benefits plan when he received his permanent resident status in 1993.   Best alleges that ExxonMobil's failure to take these steps "directly interfered with the attainment of rights and benefits to which [he] was entitled or would become entitled . . . by knowingly breaching [his] employment contract," and that the Plan Fiduciaries "abused their authority and discretion by failing to carry out the approvals to place [him] on the U.S. dollar payroll and enroll him in the U.S. benefits plan."  (Docket Entry No. 15, Amended Complaint ¶ 29).

Section 1140 provides:

> It shall be unlawful for any person to . . . discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

29 U.S.C. § 1140.  ERISA does not specify a limitations period for § 1140 claims.  When Congress does not provide a statute of limitations, federal courts look to state law for the most analogous limitations period.  *See Lopez ex rel. Gutierrez v. Premium Auto Acceptance Corp.*, 389 F.3d 504, 506–07 (5th Cir. 2004); *see also McClure v. Zoecon, Inc.*, 936 F.2d 777, 778 (5th Cir. 1991) (holding

16

that Texas wrongful discharge and employment discrimination claims have the most analogous state statute of limitations for § 1140 claims).  But the critical issue here is not whether the analogous Texas statute of limitations for a § 1140 action is two or four years.  Rather, the critical issue is when the ERISA cause of action accrued.  Federal law governs when a § 1140 ERISA cause of action accrues.  *See Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir. 1988) (holding that even when there is no federal statute of limitations, federal law determines the time at which a cause of action accrues).

Under federal law, the general accrual rule is that "a cause of action accrues when the plaintiff is 'in possession of the critical facts that he has been hurt and who has inflicted the injury.'" *Baily v. United States*, 508 F.3d 736, 740 (5th Cir. 2007) (quoting *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993)); *see also Brown v. Nationsbank Corp.*, 188 F.3d 579, 589–90 (5th Cir. 1999) ("A cause of action accrues, under federal law, 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" (quoting *Moore v. McDonald*, 30 F.3d 616, 620–21 (5th Cir. 1994))); *Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 518 (5th Cir. 1998) (same); *Jensen*, 841 F.2d at 606 ("Under federal law, the limitations period commences when 'the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge' thereof." (quoting *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 107 (5th Cir. 1987))).  Best argues that the statute of limitations did not begin to run until 2007, when he discovered that the pension calculation did not include the 8.3 years he had worked at Imperial Oil.

The problem with Best's argument is that as noted, at least by 2003, he knew that ExxonMobil had failed to comply with the requirement in the 1987 letter that he would be placed

17

on the U.S. payroll, the U.S. benefits plan, and treated as a U.S. domestic employee when he received his permanent resident status.  That had occurred in 1993.  After 1993, Best knew that he had not been converted to a U.S. domestic employee.  In 2003, Best received notice that the changes had not occurred in 1993 because he received notice that the changes were being made in 2003.

In cases involving an employee who is discharged and becomes ineligible for ERISA benefits as a result, the § 1140 claim accrues on the date that the employer notifies its employee of the discharge decision.  *See Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1140–41 (7th Cir. 1992) (holding the plaintiff's § 1140 claim accrued when the termination decision was made and communicated to plaintiff).  Following this approach, Best's § 1140 claim began to run in 2003, when Mobil notified him that it had earlier failed to convert his status, his payroll, and his benefit plan to that of a U.S. domestic employee.  Best knew in 2003 that he had not been converted to domestic employee status in accordance with the terms of his 1987 employment letter.  The fact that Best did not then realize that this breach was potentially actionable under ERISA does not affect the date of accrual.  *See Chapman*, 886 F.2d at 758 (holding the statute of limitations on the plaintiff's employment discrimination claim accrued on the date of his discharge, not on the date the plaintiff discovered the defendant's illicit motives).  ExxonMobil has shown that Best's claim accrued at the latest in 2003, when he was notified that he had just been converted to the status of a U.S. domestic employee, placed on the U.S. dollar payroll, and enrolled in the U.S. benefits plan.

Alternatively, Best cannot state a claim under § 1140 that when the defendants failed timely to convert him to the status of a U.S. domestic employee in 1993, they intended to interfere with his ability to obtain pension-service credit that would not even exist until after Exxon and Mobil merged.  A § 1140 claim requires an allegation of an intent to interfere with the ERISA benefit.  *See*

18

*White v. Omega Protein Corp.*, 226 F. App'x 360, 363 (5th Cir. 2007) (unpublished) (citing *Unida v. Levi Strauss & Co.*, 986 F.2d 970, 979–80 (5th Cir. 1993) for the proposition that a plaintiff must show that the employer acted with "specific intent" to interfere with the plaintiff's ERISA benefits); *Hinojosa v. Jostens Inc.*, 128 F. App'x 364, 368 (5th Cir. 2005) (unpublished) ( "To establish a prima facie case under [§ 1140], a plaintiff must prove, inter alia, that his employer terminated him with the specific intent to discriminate against him for exercising, or to interfere with, any ERISA right to which he is entitled or may become entitled."); *Matassarin v. Lynch*, 174 F.3d 549, 569 (5th Cir. 1999) ("A violation of [§ 1140] requires specific intent to discriminate.").   The alleged interference is the breach of the obligation to convert Best's status to that of a domestic employee in 1993, when he obtained his permanent resident status.  When that occurred, the merger between Mobil and Exxon was far in the future.  In 1993, Mobil could not have knowingly interfered with Best's rights to obtain pension credit that would only have been triggered by a merger that would not occur for another six years.

The § 1140 claim is dismissed.

### B.     The § 1132(a)(3) Equitable Estoppel Claim

In his amended complaint, Best has dropped his claim to recover benefits under § 1132(a)(1)(B).  He asserts that as a result, he is entitled to recover under § 1132(a)(3).  (Docket Entry No. 20 at 22–25).  The defendants argue that the § 1132(a)(3) claim is barred because the § 1132(a)(1)(B) claim is viable, even if unsuccessful.  (Docket Entry No. 18 at 16–20).

 In *Varity Corp. v. Howe*, 516 U.S. 489 (1996), the Supreme Court interpreted § 1132(a)(3) to allow a plaintiff to sue for breach of fiduciary duty for personal recovery when no other "appropriate" equitable relief is available.  The *Varity* Court held that an ERISA plaintiff may bring

a private action for breach of fiduciary duty only when there is no other remedy available under 29

U.S.C. § 1132.  The Supreme Court has interpreted § 1132(a)(3) to be a "catchall provision" that

acts as a safety net, offering appropriate equitable relief for injuries caused by violations that § 1132

does not remedy.  *Id.* at 511–12.  In *Varity*, the plaintiffs did not have adequate relief under

§ 1132(a)(1)(B) because they were no longer members of the plan and therefore, had no benefits due

enforceable by (a)(1)(B).  *Id.* at 515.  Relief under § 1132(a)(3) was appropriate.

Following *Varity*, when a plaintiff has brought claims under both §§ 1132(a)(1)(B) and

1132(a)(3), the Fifth Circuit has instructed that dismissal of the § 1132(a)(3) claim is proper because

appropriate relief is available under § 1132(a)(1)(B).  *See Musmeci v. Schwegmann Giant Super*

*Markets, Inc.*, 332 F.3d 339, 349 n.5 (5th Cir. 2003) (pointing out that because the plaintiffs were

found to have an adequate remedy at law under § 1132(a)(1)(B), they were foreclosed from equitable

relief under (a)(3)); *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516,

526 (5th Cir. 2000) (finding that the plaintiff, while alleging relief due under § 1132(a)(3), sought

only disability benefits allegedly due under the applicable policy for which § 1132(a)(1)(B) afforded

an adequate remedy; the section (a)(3) remedy was foreclosed); *Rhorer v. Raytheon Eng'rs &*

*Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999) (finding that in addition to seeking damages

for breach of fiduciary duty, the plaintiff sought recovery of plan benefits under § 1132(a)(1)(B) and

the recovery of plan benefits was the predominate cause of action; because § 1132(a)(1)(B) afforded

the plaintiff an avenue for legal redress, she was not able to maintain her claim for breach of

fiduciary duty under § 1132(a)(3)); *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir.

1998) (holding that the plaintiff's attempt to justify breach of fiduciary duty claims from his

coverage and benefits claim were inadequate; because the plaintiff had adequate redress for his

20

claims for the alleged improper denial of benefits through his right to sue the plans directly under § 1132(a)(1), he had no claim for relief for the alleged breach of fiduciary duty under § (a)(3)).

A potential beneficiary may not sue for breach of fiduciary duty if he has a pending claim under § 1132(a)(1)(B) for benefits allegedly owed. *See Tolson*, 141 F.3d at 610. Dismissal of the § 1132(a)(3) breach of fiduciary duty claim is warranted when the § 1132(a)(1)(B) claim to recover disability benefits is the predominate cause of action in the plaintiff's suit. *See Rhorer*, 181 F.3d at 639. Additionally, a plaintiff who brings a lawsuit for benefits may not also bring a claim under § 1132(a)(3) for breach of fiduciary duty. *Metro. Life Ins. Co. v. Palmer*, 238 F. Supp. 2d 826, 830 (E.D. Tex. 2002) (citing *Tolson*, 141 F.3d at 610, and *Constantine v. Am. Airlines Pension Benefit Plan*, 162 F. Supp. 2d 552, 557 (N.D. Tex. 2001)); *see also Zavala v. Liberty Life Assurance Co. of Boston*, No. Civ. A. SA-05-CA-210RF, 2005 WL 2100960 (W.D. Tex. 2005) (granting a motion to dismiss the plaintiff's claim under § 1132(a)(3) when the plaintiff was also seeking relief under § 1132(a)(1)(B)).

In this case, Best has dropped his claim for recovery under § 1132(a)(1)(B). The defendants contend that Best nonetheless had a viable claim under that section and as a result is foreclosed from suing under § 1132(a)(3). Section 1132(a)(1)(B) provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). This subsection allows a plan participant to assert his contractual rights under a benefit plan. *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1133 (7th Cir. 1992). Recovery under § 1132(a)(1)(B) is limited to benefits already accrued under a benefit plan. *See id.* at 1134 ("In order to enforce the terms of a plan under Section 502, the

21

participant must first qualify for the benefits provided in that plan."). Best could not maintain a claim under § 1132(a)(1)(B) because he is not seeking accrued benefits for which he was eligible. He was not eligible for the additional 8.3 years of service with an Exxon affiliate under the pension plan terms because, as of the date of the merger with Exxon, he was not a U.S. Mobil employee, enrolled in the U.S. domestic Plan, and paid on the U.S. dollar payroll. Best's claim could not be brought under § 1132(a)(1)(B). But his equitable claim for past-due contributions based on a breach of a fiduciary duty under § 1132(a)(3) cannot proceed.

"[A]ppropriate equitable relief" under § 1132(a)(3) does not include recovery in the form of payment of benefits that would have accrued to a plan beneficiary but for a plan fiduciary's breach of fiduciary duty. *See Amschwand v. Spherion Corp.*, 505 F.3d 342, 348 & n. 7 (5th Cir. 2007). In *Amschwand*, the defendant employer switched insurance companies while the plaintiff employee was on medical leave for cancer. The new policy stated that coverage would not begin until the employee returned to work for one full day. As the employee's condition deteriorated, he repeatedly contacted his employer to confirm that he was covered under the policy. Each time, he was assured that he was fully covered. Despite the employee's repeated requests for documentation of coverage terms, he never received a copy of the summary of coverage. The parties stipulated that the employee was never informed that he would be required to return to work for at least one full day. The employee died without returning to work for one full day. His wife filed a claim under the policy, only to be informed that she was ineligible for benefits because her husband had not returned to work for one full day. She sued the employer and the plan administrator individually and on her husband's behalf under § 1132(a)(3), seeking equitable relief in the form of "monetary

losses caused by the [defendant's] breach of fiduciary duty." *Id.* at 344.  The Fifth Circuit upheld the district court's grant of summary judgment to the defendants, reasoning:

> Obtaining the lost policy proceeds, as Amschwand requests, is simply a form of make-whole damages.  This demand is not equitable in derivation, but is akin to the legal remedies of extracontractual or contractual damages.  In contrast to the make-whole damages sought here, equitable restitution was designed to restore the trust res damaged by a trustee's breach of duty; it did not aim to compensate a beneficiary for expected gains that would have accrued absent a fiduciary's breach.

*Id*. at 348 (citations and footnotes omitted).  The court concluded that if the defendants breached their fiduciary duty to the plaintiff, the "appropriate equitable remedy" would be limited to the "disgorgement of [the defendant's] ill-gotten profits, *i.e.*, refund of the policy premiums."  *Id.*

The *Amschwand* court cited with approval *Callery v. United State Life Insurance Co. in the City of New York*, 392 F.3d 401 (10th Cir. 2004).  In that case, the plaintiff sought "equitable relief providing for payment of the insurance on the life of" her ex-husband.  *Id.* at 405.  The policy and summary plan description stated that an insured's right to receive spousal life insurance benefits terminated in the event of divorce, but the plaintiff had never received a copy of the policy or the summary plan description and had continued paying life insurance premiums for coverage for her ex-husband.  The appellate court upheld the dismissal of the plaintiff's breach of fiduciary duty claim, concluding that the relief sought—the recovery of benefits under the policy—was "compensatory and not typically available in equity."  *Id.* at 405–06.

*Amschwand* and *Callery* preclude equitable relief in the form of benefits that would have been due under a policy as a remedy for breach of fiduciary duty.  These cases also preclude the other relief Best asserts under § 1132(a)(3)—estopping the defendants from denying coverage for the additional years of pension service.  Such a remedy is "essentially indistinguishable from a

demand for payment." *Amschwand*, 505 F.3d at 348 n. 7.  The *Amschwand* court rejected the plaintiff's alternative characterization of her claim under § 1132(a)(3) as seeking "injunctive relief that would preclude [the defendant's] withholding payment" of benefits under the Plan, observing that "attempts to recharacterize a desired [§ 1132(a)(3)] remedy as a purely equitable form of relief, like an injunction, have been consistently rejected." *Id.*; *see also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210–11 (2002) (concluding that the plaintiff was not entitled to equitable relief under § 1132(a)(3) because "[a]n injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity"); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (concluding that the plaintiffs were not entitled to relief under § 1132(a)(3) because "[a]lthough they often dance around the word, what petitioners in fact seek is nothing other than compensatory *damages*—monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties").

In *Callery*, the court similarly rejected the plaintiff's request "to enjoin the defendants from not paying her the life insurance benefits" or for "an order estopping defendants from denying" the claim.  392 F.3d at 405.  The court noted that the plaintiff's claim, however worded, was essentially one for "compensatory damages"—"the classic form of *legal* relief." *Id.* (quoting *Great-West*, 534 U.S. at 210).  Under *Amschwand* and *Callery*, when, as here, the essence of the estoppel relief is to compel payment under a policy, the estoppel claim is not cognizable under § 1132(a)(3).  Fifth Circuit case law similarly "makes it clear that the 'reinstatement' of benefits . . . does not qualify as equitable relief under" § 1132(a)(3) when, as here, the plaintiff "cast[s] her prayer for relief as equitable, [but] in substance [] is seeking damages in the form of life insurance proceeds." *Hobbs*

*v. Baker Hughes Oilfield Operations, Inc.*, 294 F. App'x 156, 159 (5th Cir. 2008) (summary calendar) (unpublished) (citing *Amschwand*, 505 F.3d at 348).

The ERISA claims are dismissed.

## III.   Conclusion

The motion to dismiss is granted.  Best has already amended his complaint once.  His response to the defendants' motion to dismiss does not include seeking leave to amend.  Neither the record nor the parties' submissions demonstrate a nonfutile ground for amendment.  Leave to amend is denied.

SIGNED on March 23, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

25